Davis, J.,
delivered the opinion of the court:
Between the 4th day of February, 1882, and the 20th day of February, l.''84,'the plaintiff, au officer of the U. S. Navy, was absentfrom the United States engaged in the search on theLena Delta, in Siberia, for Lieutenant Chipp and party, who had formed part of the crew of the Jeannette, and in transporting to the United States the remains of Lieutenant-Commander George W. De Long and his associates.
In the performance of this duty, he traveled over 33,000 miles, over 20,000 of which was made in Siberia by sledges drawn by reindeer or dogs, or in small boats, and of this over 2,000 miles was in the immediate neighborhood of the Lena Delta, beyond the tree limit, in a most desolate and forbidding country, over 1,300 miles north of the nearest important town, Yakutsk. A large part of the duty was performed during an Arctic winter, in darkness, and with the thermometer dropping at times to over 00 degrees, Fahrenheit, below zero.
For this arduous, difficult, and dangerous service, most competently and courageously performed, plaintiff was not entitled under the statutes of the United States to receive as great compensation as if serving on a frigate anchored in the harbor of Yillefrancbe. To correct this hardship, Congress, on the 29thof July, 1886 (24 Stat. L., 346), passed the following act:
“ That the Secretary of the Navy be, and he is hereby, authorized and directed to credit Lieut. Giles B. Harber and William H. Schuetze with the highest rates of pay attached to their respective grades during their absence from the United States while employed in the search on the Lena Delta for Lieutenant Chipp and party, and also while engaged in transporting to *302 tbe United States the remains of Lieutenant-Commander George De Long and his associates; all payments to be made from the current appropriations for pay miscellaneous (24 Stat. L., 346.)
Plaintiff was commissioned a master (lieutenant, junior grade) in the Navy November 30, 1878, and completed his first five years of service in that grade November 2!', 1883, while in Siberia. After the latter date he became entitled to pay as in his second five years. Between February 5,1882, and November 29, 1883, inclusive, Mr. Schuetze was paid the sea pay of a lieutenant, junior grade, who had not completed'five years of service from the date of his commission. From November 30, 1883, to February 19, 1884, he had been paid the sea pay of a lieutenant, junior grade, who had completed five years of service. Upon this point the Comptroller ruled as follows :
“ I think it clear that Congress intended that the officer should receive the same compensation while engaged on the special duty that he would have been entitled to if the duty had been performed at sea, and he should be credited with sea pay from February 4,1882, to November 29,1883, as in his first five years after the date of commission, and from November 30, 1883, to February 20,1884, the date he returned to the United States, he is entitled to sea pay as in his second five years after date of commission. In other words, to employ the language • of the act under which this claim is made, the grade of the officer during the period specified was that of lieutenant, junior grade, in his first five years, until and including November 29, 1883, and as lieutenant, junior grade, in his second five years after that date, and the highest rate of pay attached to that grade during these respective periods is that of sea pay. The balance, as certified by the Auditor, will be modified, and the account stated as above indicated.”
To this finding the plaintiff objects, contending that the highest rate of pay attached to his “ grade ” during his absence from the United States was sea pay of a lieutenant, junior grade, who had completed five years of service, and he urges that the ruling of the Comptroller practically brings into the Navy another grade of officers, one not provided for by the statutes; that in addition to lieutenant, junior grade, the Comptroller proposes, to make two divisions, one lieutenant, junior grade, having less than five years of service, one lieutenant, junior grade, having more than five years of service, and that the same argument will apply to ensigns, lieutenants, and lieutenant-commanders whose pay is also increased after *303 five years’ service; that then there will be in the Navy fifteen “ grades ” instead of the eleven prescribed by law.
Defendants, on the other hand, contend that the highest rate of pay attached to the grade of junior lieutenant is the sea pay of a junior lieutenant who has not served five years, and that any addition thereto is in the nature of a personal emolument or benefit peculiar to the individual and not attached to the grade.
Section 1372 of the Revised Statutes provides: “The active list of the line officers of the Navy of the United States shall be divided into eleven grades,” and among these grades we find lieutenants, masters, ensigns, and midshipmen, but we do not find any divisions of grade upon the basis of length of service. The Act of March 3, 1883 (22 Stat. L., 472), contains the following provision:
“ For the pay of the Navy for the active list, namely, * * * two hundred and eighty lieutenants, one hundred masters, the title of which grade is hereby changed to that of lieutenants, and the masters now on the list shall constitute a junior grade of, and be commissioned as, lieutenants having the same rank and pay as now provided by law for masters, but promotion to and from said grade shall be by examination as provided by law for promotion to and from the grade of master, and nothing herein contained shall be so construed as to increase the pay now allowed by law to any officer in the line or staff.”
The only effect upon plaintiff of this provision of the act was to change his title. He was no longer known as a “ master,” but as a “lieutenant, junior grade,” and in the statute there is no evidence that Congress intended to establish any grade the qualification for which should be simply length of service.
A grade is a step in a series, a rank; but no lieutenant obtains increased rank simply by length of service. To obtain rank he must be eligible for promotion, must pass an examination, must be nominated by the President to the Senate, must be confirmed by that body, and must receive a commission. None of the incidents of advance in rank occur at the moment when his first five years of service terminate and when his pay increases because of length of service alone.
The point now before'us was not raised in Rockwell’s Case, *304 but the court apparently assumed that there was no division inside the rank of lieutenant when they said:
“Therefore the lowest gradehaving graduated pay when held by the claimant since last entering the service was that of lieutenant.” (Bookwell’s Case, 21 C. Cls. 338: affirmed, 120 U. S. R., 60).
We do not,find much force in the argument that if the statute be construed as plaintiff urges, his percentage of increase will be greater than that of Lieutenant Harber, who was a lieutenant (not junior grade), and who had served in that grade five years. Schuetze was of inferior rank to Harber, and had not served in that rank as many years as Harber had served in his. Harber therefore received the highest sea pay in his rank, while for a portion of his service, that now in dispute, Schuetze received the lowest sea pay in his rank.. As Schuetze now asks the highest sea pay in his rank, of course the percentage of increase in his case will be greater than in Harbor’s. Whatever force there might be in an argument based upon this fact is destroyed when we remember that, in any event, the sum total to be received by plaintiff will be less than the sum total received by his colleague for the same service, and the difference between them will be just the difference between the highest sea pay of their respective ranks. If plaintiff obtain a favorable ruling here, he will then have been paid at the rate of $2,000 per annum, while Harber has already been paid at the rate of $2,600 per annum. Ho effective argument can therefore be predicated upon lack of equity in the result.
Had Congress desired that plaintiff’s pay during this duty, which was principally on shore, should have been simply that which ho would have received for service at sea, the result could have been very easily attained by using the words “ sea pay ” instead of the phrase “ the highest rate of pay attached to their respective grades.”
In the Navy Register we find no division of grades based upon length of service.
The compensation of masters (lieutenants, junior grade) is prescribed by section 1556 Revised Statutes and divided into six rates of pay. Of these sea pay “ after five years from the date of commission ” is the highest. That portion of the section which relates to masters is as follows :
“ Masters, during the first five years after date of commis *305 sion, when at sea, one thousand eight hundred dollars; on shore duty, one thousand five hundred dollars; on leave or waiting orders, one thousand two hundred dollars ; after five years from such date, when at sea, two thousand dollars; on shore duty, one thousand seven hundred dollars ; on leave or waiting orders, one thousand four hundred dollars.”
A grade is a rank, and in our opinion Congress intended to give plaintiff the highest pay of his rank.
In this conclusion we are supported by previous interpretations of similar language. The statutes relating to the pay of a surgeon, assistant surgeon, or passed assistant surgeon, detailed as assistant to the Bureau of Medicine and Surgery, provide that he is to “ receive the highest shore pay of his grade.” (Act of July 16, 1862, ch. 183, p. 18; 12 Stat. L., 587, now Revised Statutes, 1375, as amended by the Act of February 27, 1877, Supp. Rev. Stat., ch. 69, p. 268, 40.)
.In each of these grades the pay is increased after five years for assistant surgeons and passed assistant surgeons, and for surgeons, after five, ten, fifteen, and twenty years respectively. For some twenty years, at least, both the Navy and Treasury Departments have practically and uniformly interpreted this law as entitling surgeons detailed as assistants to the Bureau of Medicine and Surgery to the shore pay given to a surgeon after twenty years’ service, although they may not have served as surgeons over five years; and these officers have always been so paid.
Such a long and uniform practical interpretation by two Departments of the Government of that statute is sufficient to warrant ns in holding that, by adopting in this special act language almost identical with that. used in the older statute, Congress intended that the special act should have the same meaning and interpretation. In Masow v. Fearson (9 How., •248) the Supreme Court said that—
“ With the knowledge of our construction, like words being again repeated by Congress, it may well be considered that a like construction was intended, and was expected to be given to the words.”
Judgment for the plaintiff in the sum of $362.48.